497 So.2d 1022 (1986)
John A. BENINATE
v.
Michael A. BRUNO, Preferred Investment Corporation, Phadco, Inc., C & T Properties, Inc., and Robert A. Guy.
No. 86-CA-131.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Rehearing Denied December 17, 1986.
Martin A. Welp, New Orleans, for plaintiff-appellant.
Jacob Kansas, Law Office of Jacob Kansas, New Orleans, for defendants-appellees.
Before GRISBAUM and WICKER, JJ., and J. BRUCE NACCARI, J. Pro Tem.
GRISBAUM, Judge.
This appeal presents issues of procedural law relating to cumulation of actions, misjoinder of parties, nonjoinder of necessary parties, lack of procedural capacity, vagueness, and prematurity. The plaintiff appeals from a judgment of the district court sustaining all of the exceptions. We affirm in part, set aside in part, and remand.
We have before us only the allegations of the plaintiff's petition, which is appended to this opinion. Basically, without joining the 12 partnerships in which he is a partner in commendam, the plaintiff-appellant seeks to sue the general partner (P.I.C., a real estate management corporation), a subsidiary (Phadco), a sister corporation (C & T), and one of the corporate officers and his son-in-law, who is an employee of the management corporation. The petition reads very much like one alleging corporate wrongdoing, charging numerous *1023 breaches of fiduciary duty, ultra vires acts, breaches of contract, comingling of funds, collections of unauthorized fees, refusals to distribute sums owed, and conversions. The allegations are both lengthy and detailed.
This Court will address only whether the trial court erred in sustaining the exceptions of prematurity and nonjoinder of necessary parties.
Our jurisprudence states that
A partnership once formed and put into action becomes, in contemplation of law, a moral being separate and distinct from the persons who compose it. It is a civil person which has peculiar rights and attributes. The partners in their individual capacities are not the owners of the partnership property. It belongs to the ideal being, which has the control and administration thereof to enable it to fulfill its legal duties and obligations. The interests of the partners therein are only residuary.
Miller v. Barnes, 135 So.2d 555, 557 (La. App. 2d Cir.1961). Citations omitted. Because the partnership is itself an entity, it is the usual proper party to file suits on partnership claims. As the jurisprudence asserts,
Under the Louisiana civil law a partnership is an entity separate and distinct from the partners thereof. Trappey v. Lumberman's Mutual Cas. Co., 229 La. 632, 86 So.2d 515 [(La.1956)]. Suits for partnership claims must be filed by the partnership itself (appearing through and represented by all its partners) and cannot be prosecuted by the partners individually.
Modicut v. Rist, 98 So.2d 268, 269 (La.App. 1st Cir.1957). Some citations omitted.
As an additional corollary to the entity theory, the partnership is principally liable for partnership debts. As expressed in the cases,
It is well-settled that a partnership in Louisiana is a legal entity, separate and distinct from the persons who compose it, and during its existence it is the proper party defendant against whom all actions to impose rights against the partnership must be brought[,] and the members of the partnership cannot be sued on a partnership debt during the existence of the partnership unless joined with the partnership itself.
Harrison v. Frye, 46 So.2d 382, 383 (La. App. 1st Cir.1950). In addition,
"liability does not become enforceable against the individuals who compose the partnership, separate and apart from the firm, until it has been dissolved. So long as it continues, they must be sued through and with it. Key v. Box, 14 La.Ann. 497 [(La.1859)]."
"`Under the law of Louisiana a commercial partnership is an entity, capable of being sued, is brought into court as defendant by service of citation upon one of its members, and while the ultimate liability of the parties is in solidoi.e., joint and severalthey, during the life of the partnership, cannot be charged individually except through the partnership; that is, during the life of the partnership a partner is, like a corporator in a corporation, liable and made to respond individually only through a judgment against the intellectual being of which he is a component part.' Liverpool, Brazil & River Platte Navigation Co. v. Agar, C.C., 14 F. 615 [, 615-16 (E.D.La.1882) ]."
Id. at 384 (quoting E.B. Hayes Mach. Co. v. Eastham, 147 La. 347, 84 So. 898, 900 (1920)).
The trial court, in its reasons for judgment, stated, "It is the opinion of this Court that the Exception of Prematurity should be maintained because it has long been held in Louisiana that there can be no cause of action by one partner against another prior to the dissolution of the partnership." We disagree.
The jurisprudential rule that one partner cannot sue another during the existence of the partnership was originally formulated, without citation, in Dromgoole v. Gardner's Widow & Heirs, 10 Mart. (O.S.) 433 (La.1821). In that same case, a concurrence suggested that the stated rule was *1024 subject to at least limited exception. Certain exceptions are now well-established, Parker v. Davis, 225 La. 359, 72 So.2d 877, 878 (1954), and Dohm v. O'Keefe, 458 So.2d 964 (La.App. 4th Cir.1984), writ denied, 460 So.2d 1046 (La.1984) perhaps anticipates the definition of still others. New La.C.C. art. 2809 in particular may create both a cause of action and a right of action in a plaintiff partner against other partners for breaches of fiduciary duty as to himself.[1]
However, confronted with an evolving jurisprudence and an absence of any factual findings, we decide only that the court erred in considering the jurisprudential rule an absolute bar to the present suit. At the very least, should the plaintiff be able to pierce P.I.C.'s corporate veil, its officers would be amenable to suit. Additionally, it appears neither C & T nor Phadco are in partnership with the plaintiff. Accordingly, depending on what is proved, the suit is not necessarily premature as to these parties. Finally, as discussed above, the rule barring suit by one partner against another during the partnership may not be available in extreme cases, among which might be fraud, breach of a fiduciary duty specifically owed the plaintiff partner by the defendant partner, and wrongdoing or self-dealing so pervasive that the partnership has become a mere facade. Accordingly, the ruling of the court maintaining the prematurity exception is set aside. However, because the plaintiff's claims are so interwoven with the interests of the various partnerships concerned, it is clear that the partnerships are either necessary or indispensable parties to suit under La.C. C.P. arts. 641-42. Accordingly, the court's ruling in this respect is correct.
We thus find that while the exception of prematurity was erroneously sustained, the exception of nonjoinder of necessary parties was properly sustained by the trial court. We see no need to address the court's actions on the remaining exceptions. We set aside the judgment relating to those exceptions.
For the reasons assigned, the judgment of the trial court dated September 18, 1985 is affirmed insofar as it sustained the exception of nonjoinder of necessary parties and, in all other respects, is set aside. The case is remanded for action consistent with the views of this opinion and the directives of La.C.C.P. art. 646. All costs of this appeal are assessed against the appellees.
AFFIRMED IN PART, SET ASIDE IN PART, AND REMANDED.

APPENDIX

PETITION
NOW INTO COURT, through undersigned counsel, comes John A. Beninate, a person of the full age of majority domiciled in Orleans Parish, who respectfully represents:

1.
Preferred Investment Corporation ("PIC") is a Louisiana corporation with its corporate domicile in Gretna, Louisiana; Phadco is a Louisiana corporation with its corporate domicile in Jefferson Parish; Michael A. Bruno is a person of the full age of majority and a domiciliary of Orleans Parish; Robert A. Guy is a person of the full age of majority and a son-in-law of Michael A. Bruno, and a domiciliary of Orleans Parish.

2.
John A. Beninate is a partner in commendam in the following Partnerships, and has interests therein as more specifically set forth herein:

 Interest of J.A. Beninate
 As Shown on Partnerships'
Partnership 1983 Income Tax Returns
Aberdeen Preferred 21.4 %
Aberdeen Properties 12.1 %

*1025
 Cindy Preferred 12.5 %
 Claire/Rose 11.11%
 Clydesbank Preferred 9.0 %
 Haynes Preferred 9.5 %
 Highland Square 8.0 %
 General Meyer Plaza 10.53%
 Shelly Arms 15.0 %
 Tara Preferred 12.9 %
 Twenty Seven Hundred 33.0 %
 Village Center 17.55%

3.
The principal place of business for all partnerships is, at present, 1221 Amelia Street, Gretna, Louisiana. These partnerships will be collectively referred to as the "Partnerships" unless the context clearly indicates otherwise.

4.
Preferred Investment Corporation is the general partner of each of the Partnerships. The Articles of Partnership give the general partner certain authority, but also reaffirms that the general partner should act in the interest of each Partnership.

5.
Phadco, Inc. is at present a fully-owned subsidiary of Preferred Investment Corporation, but was previously fully owned by Michael A. Bruno. Michael A. Bruno is the President of said Corporation.

6.
C & T Properties Corporation is a corporation formed on or about August 31, 1984, and incorporated by Michael A. Bruno and Joseph N. Bruno; the shareholders are the principals of PIC.

7.
Michael A. Bruno is the President of PIC, the President of Phadco, and upon information and belief an officer and shareholder of C & T Properties, Inc., and acted through said Corporations as an alter ego as if said Corporations were mere instrumentalities of Michael A. Bruno.

8.
Michael A. Bruno is also an in commendam partner in each of the Partnerships.

9.
Robert A. Guy is the son-in-law of Michael A. Bruno and an employee of Preferred Investment Corporation. He executed certain contracts on behalf of Phadco with Preferred Investment Corporation purportedly acting as a general partner, but in truth and in fact said contracts were solely for the benefit of Preferred Investment Corporation or Phadco to the detriment of the interests of the Partnership.

10.
Each partnership has written Articles of Partnership, which were executed between 1971 and 1983. They were amended from time to time to add limited partners. The purpose of each partnership was to "acquire, develop, own, lease, manage and operate and sell real properties" and each partnership owned apartment, townhouse or office complexes, or shopping centers.

11.
Each partnership agreement gave certain rights, duties and obligations to the general partner, but also stated that the general partner would act as a fiduciary. For instance, Article XIII of Shelly Arms' Partnership states:
General Partner acts as fiduciary:
At all times during the conduct of the business authorized hereunder, the general partner shall serve as a fiduciary of the partners in commendam and, as such, shall act in all matters as a prudent administrator.
Other partnership agreements contain similar language and, moreover, the general partner owes a fiduciary duty under general law to the partners and the partnerships in commendam.

*1026 12.
Despite this fiduciary duty, by the use of manipulative devices, defendants, by combining, acting singly and/or in concert, directly and/or indirectly, aiding and abetting and in conspiracy with one another, acted beyond the scope of their authority and breached their fiduciary duty under the law of the State of Louisiana and the partnership agreements by acts designed to provide benefits and profits to the general partner and the other defendants, in derogation of the rights of the partnerships and the limited partners, and in violation of their duties of a prudent administrator, in the following non-exclusive particulars:

13.
The general partner was not and is not authorized by the Articles of Partnership to sell all or substantially all of the properties of the partnership, without the consent of all partners in commendam.

14.
Defendants have, however, sold all, or substantially all, of the assets of the Tara Preferred and other partnerships and PIC through an agent has moreover stated in writing on November 27, 1984 that PIC has "authority to sell all of the property of any partnership without the consent of the limited partners and will do so if and when, in the opinion of PIC, such an action is warranted."

15.
Petitioner has reason to believe that defendants are in the process of, or are planning to sell all or substantially all of the property of one or more partnerships without the consent of all limited partners.

16.
The Articles of Partnership of each partnership provide for a management fee for the general partner to compensate it for the actual management of the partnership. The management fee was specifically determined and is "ten percent of gross income," except for Village Center and Shelley Arms where it was to be five percent of gross income. Said provisions in the partnership agreements were not amended in writing.

17.
Despite these provisions of the partnership agreements and general Louisiana law, upon information and belief, Michael A. Bruno, purportedly on behalf of the general partner, Preferred Investment Corporation, entered into contracts with each of the partnerships whereby Preferred Investment Corporation agreed on behalf of the Partnership to pay Preferred Investment Corporation a management fee greater than that allowed for in the Articles of Partnership, and/or, in the alternative, actually did pay such management fees in excess of the authorized fees.

18.
Thus, Preferred Investment Corporation unlawfully collected excess management fees from the partnerships in derogation of Articles of Partnership.

19.
Plaintiff only recently discovered the existence of said agreements, and has not been able to determine the extent of all such overpayments, but upon information and belief allege that such overpayments may have taken place from the inception of said partnerships and is continuing at present. Demand is made for the return of all such excess payments to each of the partnerships, and a payment to plaintiff as his interest appears.

20.
Despite plaintiff having been an officer of PIC in the past, plaintiff was not aware of these overcharges, or that any moneys were collected in excess of the amounts authorized in the Articles of Partnership, he being led to believe by Michael Bruno that all amounts collected from the partnerships were authorized amounts.

*1027 21.
Plaintiff believes amounts collected in excess of the authorized management fees for the calendar year 1983 not to be less than as follows:

Partnership 1983 Overpayment to PIC
Aberdeen Properties 2,731
Cindy Preferred 6,659
Claire/Rose 11,169
Clydesbank 4,914
Gen. Meyer Plaza 641
Highland Square 61,972
Shelly Arms 17,568
Tara Preferred 5,488
Twenty Seven Hundred 6,636
Village Center 3,415
 ________
 TOTAL $121,193
 ========

22.
As a general partner, Preferred Investment Corporation and its officers and subsidiaries had a duty to provide each partner with distribution payments pursuant to the formula in each agreement.

23.
At various times since December, 1983, Michael A. Bruno and Preferred Investment Corporation have refused to tender distributions to plaintiff John A. Beninate from the various partnerships at the time they became due. Only after several demands, including demands of counsel, Michael A. Bruno provided 21 checks, of which 12 were drawn on closed accounts. Only on or about September 27, 1984 checks were tendered for distributions on current accounts, even though those distributions were due in December, 1983, and various times thereafter. Neither Michael A. Bruno nor Preferred Investment Corporation has tendered interest on the amounts that were retained wrongfully, nor offered an explanation for such delay.

24.
In addition, beginning about March, 1984, and possibly before, Michael A. Bruno and Preferred Investment Corporation 1) comingled the funds of the partnerships with the amounts due to the limited partners by depositing all funds due for distributions to the limited partners into Preferred Investment Corporation's own account; 2) issued checks of Preferred Investment Corporation to the partners in commendam rather than distributing the funds from the partnership's account itself; and, 3) prior to, and subsequent to, this date failed to promptly pay the distributions to some of the limited partners including plaintiff, waiting as long as 10 months to tender a check, in the meantime having use of the money.

25.
On or about November 27, 1984 an agent of PIC informed plaintiff in writing that the practice of commingling these funds had ceased, but PIC refused and failed to pay any sums due for the use of said money, and has failed and refused to pay distributions that were withheld. Moreover, distribution checks continue to be presented on PIC's rather than on the partnership's account.

26.
Michael A. Bruno and Preferred Investment Corporation allowed Phadco, Inc., previously a wholly-owned corporation of Michael A. Bruno and since 1983 a wholly-owned subsidiary of Preferred Investment Corporation, to provide so-called "repair services," which services were sometimes charged at inflated prices to the partnerships. In addition to the inflated repair services, Preferred Investment Corporation charged a so-called "management fee" on top of the inflated service charge, even though not authorized by the partnership agreements to do so.

27.
In addition to the above, which are believed to have occurred in all partnerships, unless specifically indicated otherwise, the following acts, though occurring in the particular partnerships indicated, show mismanagement of the partnership's assets and a total disregard for the interests of *1028 the in commendam partners of the various partnerships. These acts include, but are not limited to:

28.
Preferred Investment Corporation and Michael Bruno converted a distribution due to plaintiff John A. Beninate, in an amount as yet unknown, but not less than $9,000.00, due as a result of the sale of property in the Cindy Partnership and, despite several demands, refused to pay said amount even though it paid distributions to the other partners. Upon information and belief, Michael A. Bruno and/or Preferred Investment Corporation wrongfully converted this amount to their own benefit.

29.
Michael A. Bruno, Preferred Investment Corporation and Phadco, Inc. charged the Shelly Arms Partnership, through Preferred Investment Corporation, an amount of $79,980 for certain roof repairs, even though in truth and fact the amount expended on such roof repairs was, upon information and belief, at least $40,000 less than Preferred Investment Corporation paid Phadco.

30.
Phadco, Preferred Investment Corporation, and Michael A. Bruno refused to provide plaintiff John A. Beninate with the documents reflecting the transaction of the roof repairs, which took place between Phadco and Preferred Investment Corporation, the cost of which was charged to Shelly Arms by Preferred Investment Corporation, and refused to provide plaintiff with the actual costs incurred by Phadco, but only provided a bid and invoice from Phadco which was paid by Preferred Investment Corporation.

31.
Michael A. Bruno, Preferred Investment Corporation and/or Phadco provided other limited partners with a distribution to compensate them for the excess amount obtained by Phadco, but refused to pay plaintiff John A. Beninate any such distribution, claiming that such distribution was a "commission" rather than a distribution.

32.
Preferred Investment and Michael A. Bruno sold certain properties of the Claire/Rose Partnership, but upon information and belief did not appropriately distribute the funds obtained from said sales.

33.
PIC allowed the purchaser of 6840 Cindy Place a discount of $23,800, contrary to the interests of the Partnership, and without the limited partners' written consent and retained $24,381.41 as "working capital" even though such funds should be distributed to the limited partners.

34.
Preferred Investment Corporation, Phadco, and Michael A. Bruno, through a series of complex transactions, first obtained an option to lease and later bought, in the name of Phadco, a certain apartment complex in Gulfport, Mississippi, known as Highland Square, and leased said complex first to a partnership named Twenty Seven Hundred, which was later dissolved; subsequently Phadco sold the property and the lease to a partnership named Highland Square. Preferred Investment Corporation was the general partner in both partnerships. Plaintiff John A. Beninate was a limited partner in both partnerships.

35.
Preferred Investment Corporation, Phadco, Michael A. Bruno, and Robert A. Guy, in derogation of their fiduciary duties to the two partnerships, engaged in a number of transactions, which provided them with significant financial and other benefits, to the detriment of the partnerships and the limited partners therein, in the following, non-exclusive particulars:

*1029 36.
Even though, during the period that Phadco had an option to lease, the rent paid to the then owner of the apartment complex, Stuart and Smith, could not have exceeded $207,000, payable in installments, Phadco had the Twenty Seven Hundred Partnership pre-pay rent in a lump sum of $343,750 cash, or $136,750 in excess of what the maximum amount could have been that Phadco paid the owner.

37.
Michael A. Bruno, purportedly in his capacity as President of the general partner, Preferred Investment Corporation, entered into an agreement on or about November 3, 1983 with its wholly-owned subsidiary, Phadco, of which Michael A. Bruno is also the President, but which agreement was signed by Robert Guy, a son-in-law of Michael A. Bruno, said agreement to provide for the "smooth transition of management and operations," upon payment of the amount of $30,000.00, which amount was converted from the assets of Highland Square Partnership and paid to Phadco on or about December 31, 1983. Not only was this transaction unauthorized by the two partnership agreements, no consent from all of the limited partners was sought, and plaintiff was unaware of this transaction until recently.

38.
At the time that Michael A. Bruno removed $30,000 from the Partnership account and converted it to Phadco's use, Phadco was not managing said apartment complex. The Twenty Seven Hundred Partnership did not receive any compensation for the "smooth transition of management."

39.
Likewise, in December of 1983, Michael A. Bruno, purportedly on behalf of Preferred Investment Corporation as general partner of Highland Square Partnership, paid to Preferred Investment Corporation's fully-owned subsidiary, Phadco, $20,000 for a so-called "non-competition agreement" whereby Phadco agreed not to compete with Highland Square. Said contract was signed by Robert A. Guy, purportedly on behalf of Phadco. Said amount was paid on December 31, 1983. The $20,000 constitutes a conversion from the Partnership assets by this agreement; it was also not approved by all of the limited partners, and plaintiff was unaware of this contract until recently.

40.
Additionally, said agreement provides that Preferred Investment Corporation, on behalf of Highland Square, can exercise an option to extend this contract for an additional year for the payment to Phadco of an additional $10,000 in December, 1984. Plaintiff seeks to prevent the conversion of an additional $10,000 to the detriment of Highland Square Partnership, or in the alternative, a return of those funds.

41.
Further, despite lack of authority in the partnership agreement, Michael A. Bruno, purportedly acting for Preferred Investment Corporation, converted $31,000 from Highland Square Partnership for the benefit of Preferred Investment Corporation as a "management fee bonus" even though Preferred Investment Corporation also paid itself the management fee authorized under the partnership agreement (plus as set forth in paragraph 21, funds in excess thereof).

42.
The transactions described in paragraphs 34-41 provided a total benefit to Phadco of $187,750; a total benefit to Preferred Investment Corporation of $31,000 (plus management fees paid in excess of the agreed to percentage); and constituted a loss of at least $136,750 to the Twenty Seven Hundred Partnership and a loss of $81,000 to the Highland Square Partnership.

*1030 43.
Even though defendants caused the Highland Square Partnership to pay $390,000 cash to Phadco for the benefit of the Twenty Seven Hundred Partnership, Phadco has agreed to only repay the Twenty Seven Hundred Partnership over a twenty-year period, though having the present use of the money. Phadco did not seek the consent of the limited partners to such an arrangement.

44.
In addition, Michael A. Bruno, PIC and/or Phadco caused Highland Square to pay "points" to PIC in the amount of $33,000 and $3,000 to Phadco, for which no authority was given under the partnership agreement nor by the limited partners.

45.
In addition, certain other amounts were paid to PIC from the partnership funds, totalling $91,793.85, for reasons that are unknown at present. In total, Michael A. Bruno, PIC and Phadco withdrew $182,000.10 from the partnership at the time Highland acquired the property, for reasons unknown at present.

46.
Under duress, defendant Michael A. Bruno forced plaintiff to sign a promissory note in the amount of $125,000 in favor of PIC in connection with the various transactions involving the Highland Square Apartments, calling for payments of $13,693 for twenty years starting November 1, 1984. Said note is a non-recourse note. In view of the various transactions outlined above, and other reasons, plaintiff avers that said promissory note is invalid and void as signed under duress, and as being in error as to the motive for the signing thereof and a declaratory order is sought declaring the rights of the parties thereunder.

47.
On November 1, 1983 Phadco, in connection with the various transactions outlined above, issued a promissory note in the amount of $130,000 to John A. Beninate calling for payments of $14,241 annually for twenty years starting on November 1, 1984. Phadco has failed and refused to make payments hereon, even though the Highland Partnership, including plaintiff, paid Phadco $390,000 in cash in 1983 and demand for the amounts due under said promissory note is made.

48.
Plaintiff was not provided with a disclosure statement and was unaware of the transactions outlined above until recently.

49.
Without obtaining the consent of plaintiff as a limited partner, and in derogation of the provisions of the Articles of Partnership of Tara Partnership, Michael A. Bruno and PIC sold all the assets of the Tara partnership to a newly formed partnership, Lane Partnership.

50.
Said sale was purportedly for $1,520,000 and PIC granted the new partnership a mortgage in the amount of $380,000 at 12.5% interest only for 10 years. The provision for the repayment of the principal is not known. No copy of this transaction was provided to plaintiff. No consent was obtained for a credit sale. In fact, plaintiff had informed defendants in writing that he did not wish a credit sale of any property.

51.
Moreover, PIC and Michael A. Bruno caused the partnership to pay PIC a "commission" of $92,200 for this unauthorized sale of all of the partnership's property and for the organization of the new partnership.

52.
Even though PIC was the general partner and Michael A. Bruno was a limited partner of the Tara Partnership, they derived substantial benefits for their own advantage, *1031 in addition to the payouts due as a result of the sale, which extra advantages were solely obtained as a result of the ownership of the property and thus belong to the partnership. These advantages include, but are not limited to:

 A consultant fee/operational audit
 fee $30,200
 Start-up management fee $27,600
 Standby commitment fee $25,000

Said amounts were paid to PIC, Michael A. Bruno, and C & T Properties, Inc. by the Lane Partnership, but upon information and belief were not applied to Tara Partnership's accounts.

53.
In addition, PIC, Michael A. Bruno and C & T Properties obtained an interest in the new partnership merely for providing the Agreement to Purchase and a financing package. This contribution was valued at $58,333 and resulted in said defendants obtaining a 10% interest in the new partnership.

54.
Therefore, in addition to the $92,750 realized by PIC and the $92,750 realized by Michael A. Bruno in present and deferred gains on the sale of the partnership property, which should be proportionally the amounts due to the remaining limited partners, PIC and Michael A. Bruno realized benefits totalling $232,333 plus the acquisition of a 10% interest in the new Lane partnership, which benefits were not shared with the limited partners or the Tara partnership.

55.
In addition, PIC and C & T Properties, Inc. are receiving management fees and other fees in the amount of 10% of "all sources of income" and 20% of "cash available for distribution" from Lane.

56.
Said transactions show an egregious disregard for the interests of the limited partners of Tara and for the partnership itself, and demand is made for the payment to the partnership Tara and the subsequent distribution of such funds to the partners, of the amounts set forth in paragraphs 51 through 55.

57.
In certain partnership agreements John A. Beninate appointed PIC as his agent. Due to the nature of the acts complained of herein, said agency has been revoked.

58.
In addition, plaintiffs believe that additional acts of misfeasance and malfeasance have occurred which are presently unknown but which may be learned during the prosecution of this case and/or such acts which may be shown at the time of trial herein.

59.
Upon information and belief, defendants are in the process of selling additional properties of the partnerships to others, with the intent of deriving similar or more benefits from such sales as they received from the sale of Tara Preferred Partnership.

60.
Plaintiff has sought to withdraw from said partnership by giving notice thereof to defendant's, PIC, agent. However, said agent of defendants PIC and Michael Bruno has informed plaintiff that it does not allow plaintiff to withdraw and will not pay him the value of the partnership interest, but that defendants will continue to sell all or substantially all the assets of the Partnerships without the consent of the limited partners if PIC deems such action warranted.

61.

FIRST CAUSE OF ACTION
Plaintiff wishes to withdraw from each and every partnership listed in paragraph 2 *1032 above, for the value of the partnership assets as of November 27, 1984, the date PIC refused to allow plaintiff to withdraw from the partnerships, for good cause arising out of the failure of the general partner, and persons in control thereof, to perform their obligations.

62.

SECOND CAUSE OF ACTION
Petitioners hereby incorporate paragraphs 1 through 61 herein as if recited in extenso. The acts complained of constitute a breach of each of the partnership agreements and a violation of the fiduciary duties defendants Michael A. Bruno, PIC, Robert A. Guy and Phadco, Inc. owe the partnerships and the limited partners under the partnership agreements and is a breach of the laws of Louisiana, and the return to the partnerships of all funds improperly diverted or paid to defendants is demanded, or in the alternative, that portion to which plaintiff is entitled.

63.

THIRD CAUSE OF ACTION
In the alternative, said acts are a bad faith breach of the various partnership agreements, for which in addition to the damages specified in paragraph 63 herein, attorney's fees, costs, accountant's fees, and all other damages are due.

64.

FOURTH CAUSE OF ACTION
Petitioners reaver and incorporate the allegations of paragraphs 1 through 63 herein. Said acts are deceptive and unfair trade practices in violation of R.S. 51:1401 et seq. Pursuant to R.S. 51:1401 et seq. plaintiff is entitled to three times the actual damages, plus attorney's fees and costs.

65.

FIFTH CAUSE OF ACTION
Upon information and belief, petitioner avers that each defendant acted singly and/or in concert in conspiracy with each other, aiding and abetting, influencing and encouraging each other in the execution of the various acts complained of, and such other acts as may be shown, and that they are liable in solido for the damages set forth in paragraphs 1-64 herein.

66.

SIXTH CAUSE OF ACTION
Defendants acting in concert and for their own benefit in derogation of their respective fiduciary duties wrongfully converted the various sums more fully described in paragraphs 1-65 herein, and demand for the return of such funds is made to the various partnerships from which these funds were converted, or in the alternative, that portion to which plaintiff is entitled.

67.

SEVENTH CAUSE OF ACTION
In the alternative, petitioner John A. Beninate prays that in the event his costs, accountant's and attorney's fees are not recovered from defendants, that such costs and fees be paid on a pro-rata basis by the partnerships herein.

68.

EIGHTH CAUSE OF ACTION
C & T Properties, Inc. was incorporated on or about August 31, 1984. Upon information and belief, the shareholders of C & T are the officers of PIC and C & T has entered into contracts with third parties whereby it receives management fees customarily paid to PIC. Petitioners aver that such impairs the ability of PIC and Phadco to pay the amounts demanded herein. Since the assets of the debtor PIC and Phadco are the pledge of its creditor, plaintiff herein, and since the obligation owed plaintiff by PIC and Phadco are assets of plaintiff's patrimony, by these acts defendants have brought about a depletion of plaintiff's patrimony. These transactions *1033 constitute enrichment sine causa under Louisiana law. Since this depletion is without cause, petitioner demands that the money and property transferred to or received by C & T Properties, Inc. be paid to plaintiff to satisfy defendants' obligations to plaintiff.

69.

NINTH CAUSE OF ACTION
In the alternative, plaintiff alleges that said acts constitute unjust enrichment of defendants and the resultant impoverishment of plaintiff.

70.
WHEREFORE, petitioner John A. Beninate, respectfully prays:
1) For judgment in favor of John A. Beninate and against defendants jointly, severally and in solido in the amount of $1 million for the value of his interests in the Partnerships, plus interest, attorney's fees, and court costs;
2) That there be judgment ordering defendants jointly, severally and in solido to return all those funds improperly obtained to each of the Partnerships in the amounts that prove to be due, trebled in accordance with R.S. 51:1401 et seq., plus attorney's fees, accountants' fees, costs, and interest as provided by law; or in the alternative,
3) That there be judgment in favor of John A. Beninate and against defendants jointly, severally, and in solido for such amounts that prove to be due in proportion to his Partnerships' interests trebled in accordance with R.S. 51:1401 et seq., plus attorney's fees, accountant's fees, costs, and interest as provided by law;
4) For a declaration by this Court that a certain promissory note more fully described in Paragraph 46 hereof, is null and void;
5) That there be judgment in favor of John A. Beninate in the amount of $130,000 against defendant Phadco, Inc., plus attorney's fees, interest, and costs;
6) For all just and equitable relief.
NOTES
[1] La.C.C. art. 2809 reads as follows:

A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.